# EXHIBIT 18

Exhibit 18 - 001



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

April 11, 2019

M-19-14

MEMORANDUM FOR THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM:     Russell T. Vought
          Acting Director

SUBJECT:    Guidance on Compliance with the Congressional Review Act

## I.     Introduction

The Constitution vests all Federal legislative power in Congress.[1]  In our system of separation of powers, agencies may prescribe rules only insofar as they have statutory authority delegated to them by Congress.  The Congressional Review Act (CRA),[2] enacted in 1996, establishes a mechanism by which Congress is able to exercise direct oversight of Federal agency action in real time, consistent with its role as the sole constitutionally authorized legislative authority.  This Memorandum reinforces the obligations of Federal agencies under the CRA in order to ensure more consistent compliance with its requirements across the Executive Branch.  It also sets forth guidelines for analysis that the Office of Information and Regulatory Affairs (OIRA) will use to properly classify regulatory actions for purposes of the CRA.

The CRA provides that agencies must submit "rule[s]," defined expansively,[3] to Congress. Congress may then pass a joint resolution of disapproval that, if signed by the President or enacted over the President's veto, invalidates the rule.[4]  If a rule is disapproved, an agency may not issue another rule in substantially the same form unless the new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule.[5]

The CRA places specific responsibilities on Federal agencies, OIRA, and the Government Accountability Office (GAO).  The CRA requires Federal agencies to notify Congress of rules they have promulgated and to provide information regarding compliance with the CRA and other

---

[1] U.S. CONST. art. I, § 1, cl. 1.

[2] 5 U.S.C. §§ 801-808 (reprinted in Appendix).

[3] In this Memorandum, "rule" refers to the CRA definition of the term, which includes a wide range of regulatory actions. *See* Part II *infra*.

[4] *Id.* § 801. Moreover, "[a]ny rule that takes effect and later is made of no force or effect by an enactment of a joint resolution under section 802 shall be treated as though such rule had never taken effect." *Id.* § 801(f).

[5] 5 U.S.C. § 801(b)(2).

**Exhibit 18 - 002**

statutes.  To help prioritize congressional review of rules with important economic impacts, the CRA requires that OIRA designate whether a rule is "major," which signals a rule's relative importance and economic impacts. The major designation triggers a report by GAO and a delayed effective date while Congress may consider whether it will disapprove the rule.

The CRA's definition of major rule mirrors President Reagan's Executive Order 12291,[6] which established OIRA's centralized regulatory review function, and closely corresponds to the economic standard for "significant regulatory action" in President Clinton's Executive Order 12866,[7] which currently governs centralized review.  Moreover, the CRA incorporates and reinforces other statutory and executive order requirements for regulatory actions overseen by OIRA.[8] OIRA thus has a number of overlapping responsibilities and review functions that relate to the CRA.

This Memorandum reaffirms the broad applicability of the CRA to all Federal agencies and a wide range of rules; sets forth a process for OIRA to make major determinations; and provides guidance for the type of analysis required for these determinations. While agencies have an ongoing responsibility to comply with the CRA, the major determination process outlined here will take full effect on May 11, 2019.  This Memorandum supersedes earlier OMB guidance on the CRA.[9]

## II.      The Congressional Review Act's Broad Scope

Congress legislated broadly when setting forth a process for reviewing agency action. The CRA applies to all Federal agencies, including the historically independent agencies.[10] Furthermore, the CRA adopts the Administrative Procedure Act's (APA) expansive definition of "rule," which includes, subject to certain exceptions, "the whole or a part of an agency statement

---

[6] See Exec. Order No. 12291 § 1(b), 46 Fed. Reg. 13193 (Feb. 19, 1981); see also Joint Statement for the Record by Senators Nickles, Reid, and Stevens, S3683 (Apr. 18, 1996) ("The definition of a 'major rule' in subsection 804(2) is taken from President Reagan's Executive Order 12291. . . . The authors intend the term 'major rule' in this chapter to be broadly construed, including the non-numerical factors contained in the subsections 804(2)(B) and (C).").

[7] See Exec. Order No. 12866, § 3(f), 58 Fed. Reg. 51735 (Oct. 4, 1993).  A regulatory action is economically significant if it "is likely to result in a rule that may … [h]ave an annual effect on the economy of $100 million or more or adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities." Id. § 3(f)(1).

[8] The CRA's requires agencies to report to Congress any available cost-benefit analysis and a rule's compliance with the Regulatory Flexibility Act (RFA) and the Unfunded Mandates Reform Act (UMRA). OIRA has statutory obligations to ensure agency compliance with the RFA's requirement that certain agencies receive input from affected small businesses and the UMRA's requirement that OIRA submit a Cost-Benefit Report to Congress tracking agency compliance with the UMRA. See 2 U.S.C. §§ 1531-1538; 5 U.S.C. §§ 601-612. Additionally, Executive Order 12866 requires OIRA to ensure that agencies conduct meaningful cost-benefit analysis of "significant" or "economically significant" rules.

[9] Office of Mgmt. & Budget, Memorandum No. M-99-13, "Guidance for Implementing the Congressional Review Act" (Mar. 30, 1999).

[10] Section 804(1) of the CRA uses the Administrative Procedure Act (APA) definition of "agency," which includes "each authority of the Government of the United States" including the historically independent agencies. See 5 U.S.C. § 551(1). The CRA does not cover Federal entities that fall outside the definition of "agency" under 5 U.S.C. § 551(1).

**Exhibit 18 - 003**

of general . . . applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."[11]

The CRA applies to more than just notice-and-comment rules; it also encompasses a wide range of other regulatory actions, including, *inter alia*, guidance documents, general statements of policy, and interpretive rules.[12] The CRA provides exemptions for rules: "of particular applicability"; "relating to agency management or personnel"; or "of agency organization, procedure, or practice that do[] not substantially affect the rights or obligations of non-agency parties."[13]  The CRA also specifically exempts rules concerning monetary policy developed by the Board of Governors of the Federal Reserve System or the Federal Open Market Committee and rules promulgated under the Telecommunications Act of 1996 and subsequent amendments.[14] These limited and explicit exemptions underscore that all other rules must follow the requirements of the CRA.[15]

## III.      Major Determination Process

Under the CRA, Federal agencies must coordinate with OIRA regarding a major determination for all final, interim final, and direct final rules, irrespective of whether a rule would otherwise be submitted for regulatory review.[16]  The CRA creates a special category of "major rules" and requires OIRA to determine whether a rule is major based on a finding by OIRA that the rule "has resulted in or is likely to result in—

---

[11] 5 U.S.C. § 551(4); *id.* § 804(3) (incorporating § 551's definition of "rule" for purposes of the CRA). The APA's definition of "rule" also covers agency statements of "particular applicability," but, as noted, the CRA exempts such statements from its reach. *See id.*

[12] 5 U.S.C. § 551(4).

[13] 5 U.S.C. § 804(3).

[14] *See* 5 U.S.C. §§ 804, 807.

[15] 5 U.S.C. §§ 551(4), 804; *see also* Letter of Susan Poling, General Counsel, Gov't Accountability Office, to The Honorable Pat Toomey (Oct. 19, 2017), *available at* https://www.gao.gov/assets/690/687879.pdf.

[16] The CRA's legislative history confirms the breadth of the statute's plain text:

> Certain covered agencies, including many "independent agencies," include their proposed rules in the Unified Regulatory Agenda published by OMB but do not normally submit their final rules to OMB for review. Moreover, interpretative rules and general statements of policy are not normally submitted to OMB for review. Nevertheless, it is the Administrator that must make the major rule determination under this chapter whenever a new rule is issued. The Administrator may request the recommendation of any agency covered by this chapter on whether a proposed rule is a major rule within the meaning of subsection 804(2), but the Administrator is responsible for the ultimate determination. Thus, all agencies or entities covered by this chapter will have to coordinate their rulemaking activity with OIRA so that the Administrator may make the final, major rule determination.

Joint Statement for the Record by Senators Nickles, Reid, and Stevens, S3683 (Apr. 18, 1996).

**Exhibit 18 - 004**

(A) an annual effect on the economy of $100,000,000 or more;

(B) a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; or

(C) significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets."[17]

The CRA requires Federal agencies to submit a rule to Congress along with a report that includes OIRA's major determination and the proposed effective date of the rule.[18]  A major rule may take effect no sooner than 60 calendar days after an agency submits a CRA report to Congress or the rule is published in the *Federal Register*, whichever is later.[19]  Agencies should not publish a rule—major or not major—in the *Federal Register*, on their websites, or in any other public manner before OIRA has made the major determination and the agency has complied with the requirements of the CRA.

To make the required major finding under the CRA, OIRA sets forth the following determination process for all Federal agencies, including the historically independent agencies.

## A. Regulatory actions submitted through the Executive Order 12866 process

For regulatory actions submitted pursuant to Executive Order 12866 review, OIRA will continue to incorporate the CRA major determination into its standard process.  Agencies should include both a proposed significance determination and a proposed determination of whether the rule is major under Section 804(2).  OIRA will review the agency's CRA determination consistent with the principles outlined in this Memorandum.

## B. Regulatory actions not submitted through the Executive Order 12866 process

At present, OIRA does not consistently receive from agencies the information necessary to determine whether a rule is major, in part because some regulatory actions are rules under the CRA are not submitted to OIRA through the centralized review process of Executive Order 12866.  To ensure faithful execution of its statutory duty, OIRA is instituting a systematic process to determine whether rules that would not be submitted to OIRA under Executive Order

---

[17] 5 U.S.C. § 804(2).

[18] 5 U.S.C. § 801(a)(1)(A).

[19] 5 U.S.C. § 801(a)(3)(A). The CRA creates limited exceptions to this requirement. *See id.* § 801(c); § 808. An agency may invoke the "good cause" exception under § 808(2) in the case of rules for which the agency has found "good cause" under the APA, § 553(b)(3)(B), to issue the rule without providing the public with an advance opportunity to comment. Application in other circumstances will be considered on a case-by-case basis.

The major designation also triggers a requirement that the Comptroller prepare a report assessing the rule's compliance with statutory provisions and executive orders. *See id.* § 801(a)(2). The GAO provides information on the submission of rules to GAO and to Congress on its website. *See* https://www.gao.gov/legal/congressional-review-act/faq. Agencies are to use the Submission of Federal Rules form for this purpose. *See Submission of Federal Rules Under the Congressional Review Act* (Nov. 9, 1999), https://www.gao.gov/decisions/majrule/fedrule2.pdf.

**Exhibit 18 - 005**

12866 are major.  Agencies should implement, in consultation with OIRA desk officers, the process outlined below:

1.   Each agency should notify OIRA regularly of upcoming rules. An agency may provide such a notification by submitting a list of planned rules, including summaries of each rule and the agency's recommended designation of whether a rule is major.  For example, an agency may recommend that a rule should not be deemed major by explaining in the summary that it is routine, ministerial, or otherwise does not meet the statutory criteria for a major rule.

2.   For rules that an agency considers not major, within ten days of notification, OIRA may inform the agency that OIRA agrees with the agency and may designate such rules as not major. Otherwise, such rules will be subject to the major rule determination process.

3.   For rules the agency considers major and those rules not previously designated by OIRA as not major, the agency should submit the rule to OIRA for a CRA determination at least 30 days before the agency publishes the rule in the *Federal Register* or otherwise publicly releases the rule.

4.   Agencies should include analysis with each rule sufficient to allow OIRA to determine whether the rule is major under the criteria of Section 804(2).  This analysis should be appropriate to the type of rule and the degree of uncertainty concerning its impacts, and consistent with the principles enunciated in Circular A-4 and Part IV of this Memorandum. Insufficient or inadequate analysis may delay OIRA's determination and an agency's ability to publish a rule and to make the rule effective.  To make the required finding, OIRA may request additional information from the agency.

5.   OIRA will review each rule and the related analysis, make the findings required by the CRA, and inform the agency of OIRA's designation of the rule as major or not major.

6.   After the designation, agencies may send the CRA report to Congress and the Comptroller in accordance with the applicable provisions of Section 801(a), and may then publish the rule in the *Federal Register*, and otherwise publicly release the rule.  If OIRA designates a rule as major, agencies should delay the effective date of the rule by 60 days from the date of the rule's submission to Congress or the rule is published in the *Federal Register*, whichever is later, subject to the CRA's limited exceptions to this requirement.[20]

OIRA anticipates designating certain categories of rules as presumptively not major in order to prioritize evaluation of rules more likely to be major.  OIRA will work with senior agency officials to identify categories of rules that are presumptively not major because they are unlikely to result in the impacts described for a major rule.  Rules within these categories would not be subject to the major determination process described in this Memorandum. OIRA, however, reserves the right to revoke this categorical "not major" determination for any category or for any particular rule.

---

[20] 5 U.S.C. §§ 801(c), 808.

**Exhibit 18 - 006**

For all rules, agencies should include a CRA compliance statement in the body of the rule to provide transparency and notice to Congress.  Agencies should include language within the body of the rule as to whether OIRA designated the rule as major or not major. For instance: "Pursuant to the Congressional Review Act (5 U.S.C. § 801 et seq.), the Office of Information and Regulatory Affairs designated this rule as [a 'major rule' or not a 'major rule'], as defined by 5 U.S.C. § 804(2)."

## IV.    Regulatory Analysis Principles

To find whether a rule is likely to result in the impacts of a "major rule," OIRA will use longstanding analytical principles applied under Executive Order 12866 to determine economic significance.

In general, major designations have focused on rules that have an annual effect on the economy of $100 million or more, as specified in CRA Section 804(2)(A).[21]  Yet the CRA includes additional, distinct criteria for major rules.  A rule is also major if it is likely to result in a "major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions," Section 804(2)(B), or in "significant adverse effects on competition, employment, investment, productivity, innovation" or the ability of U.S. entities to compete with foreign entities, Section 804(2)(C). The CRA clearly lists these criteria as alternatives, so a rule can qualify as major under Section 804(2)(B) or (C) even if its annual effect on the economy is less than $100 million.

To determine a rule's economic effect for all three criteria of Section 804(2), agencies should follow the analytical approach set forth in OMB Circular A-4,[22] which includes the following instructions:

1.  The scope of the analysis should incorporate significantly affected entities and the time horizon should encompass all important effects of the agency action.[23]

2.  A rule's costs, benefits, and transfer impacts must be assessed relative to a baseline—that is, the predicted future state of the world in the absence of the rule being analyzed. The baseline should reflect an agency's best assessment of market evolution and other factors that may change independent of the rule.  In general, when assessing the economic effects of the first rule that implements a statutory requirement, agencies should use a pre-statutory baseline. In some instances, an agency may provide analysis using multiple

---

[21] *See* Office of Mgmt. & Budget, Memorandum No. M-99-13, "Guidance for Implementing the Congressional Review Act" (discussing only the $100 million threshold).

[22] Office of Mgmt. & Budget, Circular A-4 (2003), *available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/circulars/A4/a-4.pdf. Other helpful references on regulatory analysis may be found at https://www.whitehouse.gov/omb/information-regulatory-affairs/regulatory-matters/.

[23] A regulatory analysis should present undiscounted year-by-year streams of benefit, cost, and transfer estimates for the full analytic time horizon. *See* Circular A-4, at 14, 31 and 45. If any undiscounted benefit, cost, or transfer estimate is at least $100 million in at least one year (that is, in any consecutive twelve-month period), then OIRA will designate the rule major under CRA Section 804(2)(A) and economically significant under Executive Order 12866.

6

**Exhibit 18 - 007**

baselines, especially when doing so would highlight areas of agency policy discretion. In cases where both pre-statutory and post-statutory baselines are analytically informative, the pre-statutory baseline will typically be used to determine major status under the CRA.[24]

3. Agencies should assess potential impacts of substantial magnitude on any individuals or entities in society.  These may include, for example, "private-sector compliance costs and savings; government administrative costs and savings; gains or losses in consumers' or producers' surpluses; discomfort or inconvenience costs and benefits; and gains or losses of time in work, leisure [or] travel settings."[25]

4. Agency analysis should look beyond the direct effects of agency action and consider any important ancillary or indirect effects.

5. Although the precise consequences (benefits, costs, or transfers) of rules may be uncertain, agencies should analyze and present important uncertainties, including the probability of their occurrence.

6. Any information that the agency relies upon for its analysis should comply with the Information Quality Act (IQA), OMB's information quality guidance, and the agency's supplemental IQA guidance.[26]

Analysis required by Sections 804(2)(B) and (C) may sometimes be difficult to quantify; however, agencies should provide quantitative analysis when reasonably possible and otherwise should provide qualitative analysis.

Section 804(2)(B) suggests that a rule may qualify as major under the CRA if it imposes disproportionate costs on a particular group, in comparison to the burdens experienced by other groups or the benefits experienced by the burdened group.  OIRA recommends that agencies begin with a screening analysis by region and industrial sector and evaluate effects on private consumers and public entities separately.  If the screening analysis reveals that burdens faced by any one of these groups are likely to be significant and disproportionate to the benefits experienced by that group or the burden borne by other groups, the agency should evaluate whether the rule is major under Section 804(2)(B). The evaluation should include, *inter alia*, review of any relevant studies and could include informal consultations with representatives of the potentially disproportionately burdened group.

Section 804(2)(C) instructs agencies to examine a rule's effects on various aspects of the U.S. economy.  An agency's Section 804(2)(C) analysis should also begin with a screening analysis to determine whether a rule might be expected to place significant burdens on the economy, for instance, by depressing wages, creating barriers to investment from domestic or

---

[24] *See* Circular A-4, at 15-16 (explaining how to identify the appropriate baseline for regulatory analysis).

[25] *Id.* at 37.

[26] Office of Mgmt. & Budget, "Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility, and Integrity of Information Disseminated by Federal Agencies" (Feb. 22, 2002), *available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/assets/OMB/fedreg/reproducible2.pdf.

**Exhibit 18 - 008**

foreign sources, or reducing incentives to innovate. If the screening analysis suggests that the rule may result in significant economic burdens, the agency should conduct an evaluation that includes, *inter alia*, review of any relevant studies and that could include informal consultations with representatives of the potentially burdened component of the economy.

## V.    Miscellaneous

This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Please consult with your agency's OIRA desk officer if you have questions regarding this Memorandum.

Attachment

**Exhibit 18 - 009**

**Attachment**

**Congressional Review Act (5 U.S.C. Chapter 8)**

**§ 801. Congressional review**

(a) (1) (A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing--

(i) a copy of the rule;

(ii) a concise general statement relating to the rule, including whether it is a major rule; and

(iii) the proposed effective date of the rule.

(B) On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress--

(i) a complete copy of the cost-benefit analysis of the rule, if any;

(ii) the agency's actions relevant to sections 603, 604, 605, 607, and 609;

(iii) the agency's actions relevant to sections 202, 203, 204, and 205 of the Unfunded Mandates Reform Act of 1995; and

(iv) any other relevant information or requirements under any other Act and any relevant Executive orders.

(C) Upon receipt of a report submitted under subparagraph (A), each House shall provide copies of the report to the chairman and ranking member of each standing committee with jurisdiction under the rules of the House of Representatives or the Senate to report a bill to amend the provision of law under which the rule is issued.

(2) (A) The Comptroller General shall provide a report on each major rule to the committees of jurisdiction in each House of the Congress by the end of 15 calendar days after the submission or publication date as provided in section 802(b)(2). The report of the Comptroller General shall include an assessment of the agency's compliance with procedural steps required by paragraph (1)(B).

(B) Federal agencies shall cooperate with the Comptroller General by providing information relevant to the Comptroller General's report under subparagraph (A).

(3) A major rule relating to a report submitted under paragraph (1) shall take effect on the latest of—

9

**Exhibit 18 - 010**

**(A)** the later of the date occurring 60 days after the date on which--

    **(i)** the Congress receives the report submitted under paragraph (1); or

    **(ii)** the rule is published in the Federal Register, if so published;

**(B)** if the Congress passes a joint resolution of disapproval described in section 802 relating to the rule, and the President signs a veto of such resolution, the earlier date--

    **(i)** on which either House of Congress votes and fails to override the veto of the President; or

    **(ii)** occurring 30 session days after the date on which the Congress received the veto and objections of the President; or

**(C)** the date the rule would have otherwise taken effect, if not for this section (unless a joint resolution of disapproval under section 802 is enacted).

**(4)** Except for a major rule, a rule shall take effect as otherwise provided by law after submission to Congress under paragraph (1).

**(5)** Notwithstanding paragraph (3), the effective date of a rule shall not be delayed by operation of this chapter beyond the date on which either House of Congress votes to reject a joint resolution of disapproval under section 802.

**(b)**

**(1)** A rule shall not take effect (or continue), if the Congress enacts a joint resolution of disapproval, described under section 802, of the rule.

**(2)** A rule that does not take effect (or does not continue) under paragraph (1) may not be reissued in substantially the same form, and a new rule that is substantially the same as such a rule may not be issued, unless the reissued or new rule is specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule.

**(c)**

**(1)** Notwithstanding any other provision of this section (except subject to paragraph (3)), a rule that would not take effect by reason of subsection (a)(3) may take effect, if the President makes a determination under paragraph (2) and submits written notice of such determination to the Congress.

**(2)** Paragraph (1) applies to a determination made by the President by Executive order that the rule should take effect because such rule is--

**(A)** necessary because of an imminent threat to health or safety or other emergency;

**(B)** necessary for the enforcement of criminal laws;

**(C)** necessary for national security; or

**(D)** issued pursuant to any statute implementing an international trade agreement.

**Exhibit 18 - 011**

**(3)** An exercise by the President of the authority under this subsection shall have no effect on the procedures under section 802 or the effect of a joint resolution of disapproval under this section.

**(d)** (1) In addition to the opportunity for review otherwise provided under this chapter, in the case of any rule for which a report was submitted in accordance with subsection (a)(1)(A) during the period beginning on the date occurring--

**(A)** in the case of the Senate, 60 session days, or

**(B)** in the case of the House of Representatives, 60 legislative days,

before the date the Congress adjourns a session of Congress through the date on which the same or succeeding Congress first convenes its next session, section 802 shall apply to such rule in the succeeding session of Congress.

(2) **(A)** In applying section 802 for purposes of such additional review, a rule described under paragraph (1) shall be treated as though--

**(i)** such rule were published in the Federal Register (as a rule that shall take effect) on--

**(I)** in the case of the Senate, the 15th session day, or

**(II)** in the case of the House of Representatives, the 15th legislative day,

after the succeeding session of Congress first convenes; and

**(ii)** a report on such rule were submitted to Congress under subsection (a)(1) on such date.

**(B)** Nothing in this paragraph shall be construed to affect the requirement under subsection (a)(1) that a report shall be submitted to Congress before a rule can take effect.

(3) A rule described under paragraph (1) shall take effect as otherwise provided by law (including other subsections of this section).

**(e)**

**(1)** For purposes of this subsection, section 802 shall also apply to any major rule promulgated between March 1, 1996, and the date of the enactment of this chapter [March 29, 1996].

**(2)** In applying section 802 for purposes of Congressional review, a rule described under paragraph (1) shall be treated as though--

**(A)** such rule were published in the Federal Register on the date of enactment of this chapter [March 29, 1996]; and

**(B)** a report on such rule were submitted to Congress under subsection (a)(1) on such date.

**(3)** The effectiveness of a rule described under paragraph (1) shall be as otherwise provided by law, unless the rule is made of no force or effect under section 802.

**Exhibit 18 - 012**

**(f)**  Any rule that takes effect and later is made of no force or effect by enactment of a joint resolution under section 802 shall be treated as though such rule had never taken effect.

**(g)**  If the Congress does not enact a joint resolution of disapproval under section 802 respecting a rule, no court or agency may infer any intent of the Congress from any action or inaction of the Congress with regard to such rule, related statute, or joint resolution of disapproval.

## § 802. Congressional disapproval procedure

**(a)**  For purposes of this section, the term "joint resolution" means only a joint resolution introduced in the period beginning on the date on which the report referred to in section 801(a)(1)(A) is received by Congress and ending 60 days thereafter (excluding days either House of Congress is adjourned for more than 3 days during a session of Congress), the matter after the resolving clause of which is as follows: "That Congress disapproves the rule submitted by the ------ relating to ------, and such rule shall have no force or effect." (The blank spaces being appropriately filled in).

**(b)**

> **(1)**  A joint resolution described in subsection (a) shall be referred to the committees in each House of Congress with jurisdiction.

> **(2)**  For purposes of this section, the term "submission or publication date" means the later of the date on which--

>> **(A)**  the Congress receives the report submitted under section 801(a)(1); or

>> **(B)**  the rule is published in the Federal Register, if so published.

**(c)**  In the Senate, if the committee to which is referred a joint resolution described in subsection (a) has not reported such joint resolution (or an identical joint resolution) at the end of 20 calendar days after the submission or publication date defined under subsection (b)(2), such committee may be discharged from further consideration of such joint resolution upon a petition supported in writing by 30 Members of the Senate, and such joint resolution shall be placed on the calendar.

**(d)**

> **(1)**  In the Senate, when the committee to which a joint resolution is referred has reported, or when a committee is discharged (under subsection (c)) from further consideration of a joint resolution described in subsection (a), it is at any time thereafter in order (even though a previous motion to the same effect has been disagreed to) for a motion to proceed to the consideration of the joint resolution, and all points of order against the joint resolution (and against consideration of the joint resolution) are waived. The motion is not subject to amendment, or to a motion to postpone, or to a motion to proceed to the consideration of other business. A motion to reconsider the vote by which the motion is agreed to or disagreed to shall not be in order. If a motion to proceed to the consideration of the joint resolution is agreed to, the joint resolution shall remain the unfinished business of the Senate until disposed of.

> **(2)**  In the Senate, debate on the joint resolution, and on all debatable motions and appeals in connection therewith, shall be limited to not more than 10 hours, which shall

**Exhibit 18 - 013**

be divided equally between those favoring and those opposing the joint resolution. A motion further to limit debate is in order and not debatable. An amendment to, or a motion to postpone, or a motion to proceed to the consideration of other business, or a motion to recommit the joint resolution is not in order.

(3)  In the Senate, immediately following the conclusion of the debate on a joint resolution described in subsection (a), and a single quorum call at the conclusion of the debate if requested in accordance with the rules of the Senate, the vote on final passage of the joint resolution shall occur.

(4)  Appeals from the decisions of the Chair relating to the application of the rules of the Senate to the procedure relating to a joint resolution described in subsection (a) shall be decided without debate.

(e)  In the Senate the procedure specified in subsection (c) or (d) shall not apply to the consideration of a joint resolution respecting a rule--

(1)  after the expiration of the 60 session days beginning with the applicable submission or publication date, or

(2)  if the report under section 801(a)(1)(A) was submitted during the period referred to in section 801(d)(1), after the expiration of the 60 session days beginning on the 15th session day after the succeeding session of Congress first convenes.

(f)  If, before the passage by one House of a joint resolution of that House described in subsection (a), that House receives from the other House a joint resolution described in subsection (a), then the following procedures shall apply:

(1)  The joint resolution of the other House shall not be referred to a committee.

(2)  With respect to a joint resolution described in subsection (a) of the House receiving the joint resolution--

(A)  the procedure in that House shall be the same as if no joint resolution had been received from the other House; but

(B)  the vote on final passage shall be on the joint resolution of the other House.

(g)  This section is enacted by Congress--

(1)  as an exercise of the rulemaking power of the Senate and House of Representatives, respectively, and as such it is deemed a part of the rules of each House, respectively, but applicable only with respect to the procedure to be followed in that House in the case of a joint resolution described in subsection (a), and it supersedes other rules only to the extent that it is inconsistent with such rules; and

(2)  with full recognition of the constitutional right of either House to change the rules (so far as relating to the procedure of that House) at any time, in the same manner, and to the same extent as in the case of any other rule of that House.

## § 803. Special rule on statutory, regulatory, and judicial deadlines

(a)  In the case of any deadline for, relating to, or involving any rule which does not take effect (or the effectiveness of which is terminated) because of enactment of a joint resolution

13

Exhibit 18 - 014

under section 802, that deadline is extended until the date 1 year after the date of enactment of the joint resolution. Nothing in this subsection shall be construed to affect a deadline merely by reason of the postponement of a rule's effective date under section 801(a).

**(b)** The term "deadline" means any date certain for fulfilling any obligation or exercising any authority established by or under any Federal statute or regulation, or by or under any court order implementing any Federal statute or regulation.

## § 804. Definitions

For purposes of this chapter--

**(1)** The term "Federal agency" means any agency as that term is defined in section 551(1).

**(2)** The term "major rule" means any rule that the Administrator of the Office of Information and Regulatory Affairs of the Office of Management and Budget finds has resulted in or is likely to result in--

**(A)** an annual effect on the economy of $ 100,000,000 or more;

**(B)** a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions; or

**(C)** significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets.

The term does not include any rule promulgated under the Telecommunications Act of 1996 and the amendments made by that Act.

**(3)** The term "rule" has the meaning given such term in section 551, except that such term does not include--

**(A)** any rule of particular applicability, including a rule that approves or prescribes for the future rates, wages, prices, services, or allowances therefor, corporate or financial structures, reorganizations, mergers, or acquisitions thereof, or accounting practices or disclosures bearing on any of the foregoing;

**(B)** any rule relating to agency management or personnel; or

**(C)** any rule of agency organization, procedure, or practice that does not substantially affect the rights or obligations of non-agency parties.

## § 805. Judicial review

No determination, finding, action, or omission under this chapter shall be subject to judicial review.

## § 806. Applicability; severability

**(a)** This chapter shall apply notwithstanding any other provision of law.

**(b)** If any provision of this chapter or the application of any provision of this chapter to any person or circumstance, is held invalid, the application of such provision to other persons or circumstances, and the remainder of this chapter, shall not be affected thereby.

14

**Exhibit 18 - 015**

## § 807. Exemption for monetary policy

Nothing in this chapter shall apply to rules that concern monetary policy proposed or implemented by the Board of Governors of the Federal Reserve System or the Federal Open Market Committee.

## § 808. Effective date of certain rules

Notwithstanding section 801--

    **(1)** any rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping, or

    **(2)** any rule which an agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rule issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest, shall take effect at such time as the Federal agency promulgating the rule determines.

15

**Exhibit 18 - 016**