IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| STATE OF FLORIDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| XAVIER BECERRA, Secretary of ) | Case No.: 8:21-CV-839-SDM-AAS |
| Health and Human Services, in his ) | |
| official capacity; HEALTH AND ) | |
| HUMAN SERVICES; ROCHELLE ) | |
| WALENSKY, Director of Centers for ) | |
| Disease Control and Prevention, in ) | |
| her official capacity; CENTERS FOR ) | |
| DISEASE CONTROL AND ) | |
| PREVENTION; UNITED STATES ) | |
| OF AMERICA, ) | |
| ) | |
| Defendants. | |

_____

**STATE OF ALASKA'S AMENDED MOTION TO INTERVENE**

The State of Alaska requests that it be granted permission to intervene

in support of plaintiff, the State of Florida, pursuant to Federal Rule of Civil

Procedure 24(b). This litigation concerns the legality of orders, restrictions

and guidance issued by the Centers for Disease Control and Prevention

("CDC") or to be issued by the CDC. Congress has recently passed a law that

is specific to large cruise ships visiting Alaska in 2021 and requires those

cruise ships to comply with the CDC's orders, restrictions and guidance,

1

whatever they may be at the time of sailing. The CDC has been rapidly

changing its restrictions and guidance over the past few weeks, apparently in

direct response to this litigation. The nature of those restrictions and

guidance may affect the number of cruise ships and passengers that visit

Alaska in 2021, which directly impacts the revenues of the State of Alaska

and many of its port communities, and indirectly affects the overall economic

health of the State and its citizens. Therefore, Alaska seeks permissive

intervention to protect its interests in the CDC's constantly-morphing orders,

restrictions and guidance which will apply to all large Alaska cruises in 2021.

## BACKGROUND

In March 2020, the CDC issued the first of a series of No Sail Orders

shutting down the cruise industry in the United States. 60 Fed. Reg. 16628.

The order applied to passenger vessels with a capacity of 250 or more

operating in U.S. waters with an overnight itinerary. *Id.* The CDC renewed

the No Sail Order in separate orders issued on April 9, July 16, and

September 30, 2020. *See* 85 Fed. Reg. 21004, 85 Fed. Reg. 44085, 85 Fed. Reg.

62732. From March through September of 2020, also in response to the

pandemic, for the most part the cruise industry voluntarily ceased cruising.[1]

As a result, Alaska's 2020 cruise season was canceled.[2]

On October 31, 2020, the CDC issued a "Conditional Sail Order" that

promised a "phased resumption of cruise ship passenger operations." 85 Fed.

Reg. 70153. The initial phase consisted of testing and additional safeguards

for crew members while the CDC ensured operators build the laboratory

capacity needed to test future passengers. *Id.* Subsequent phases would

include simulated voyages, certification for ships that meet specific

requirements, and a phased return to passenger voyages. *Id.*

On April 2, 2021, the CDC issued technical guidance for phase 2a of its

phased approach.[3] This guidance was completely unworkable, as a practical

---

[1]    *See* Cruise Lines International Association, "Update On Cruise Industry
Response To COVID-19 (Global)" (April 21, 2020) (describing members' voluntary
suspension of cruising worldwide since mid-March, 2020) (available online at:
https://cruising.org/en/news-and-research/press-room/2020/april/clia-covid-19-
toolkit); Cruise Lines International Association, "CLIA Announces Voluntary
Suspension of Cruise Operations from U.S. Ports (USA)" (describing members'
ongoing voluntary suspension of cruising in the U.S. through September, 2020)
(available online at https://cruising.org/en/news-and-research/press-
room/2020/june/clia-announces-voluntary-suspension-of-cruise-operations-from-us-
ports").

[2]    *See* James Brooks, *Alaska's Last Remaining Big-Ship Cruises of 2020 Have
Been Canceled,* July 6, 2020, Anchorage Daily News (July 6, 2020) (available online
at https://www.adn.com/business-economy/2020/07/06/alaskas-last-remaining-big-
ship-cruises-of-2020-have-been-canceled/).

[3]    U.S. Centers for Disease Control and Prevention, "CDC Issues Next Phase of
the Conditional Sail Order for Cruise Ship Operators" (April 2, 2021) (available
online at https://www.cdc.gov/media/releases/2021/s0402-conditional-sail-
orders.html).

matter, to allow for an Alaska cruise season.[4] Cruising in Alaska is seasonal,

and the vast majority of cruises visit between May and September. Ex. 1 at 5[5]

The CDC's guidance called for a lengthy process for cruise ships to complete

"simulated voyages" and receive CDC approval before beginning passenger

operations, and did not include any technical guidance about how to conduct

those simulated voyages or passenger operations.[6] [Dkt. 9-13, 9-14]

Furthermore, before undergoing "simulated voyages," it required cruise lines

to enter into agreements with each port of call for onshore housing, medical

and other services that were impractical, if not impossible, for Alaska's

smaller ports to provide—despite the fact that large ports very nearby could

provide those services. [Dkt. 9-13 at 2, Dkt. 19-1 at 5-6]

Shortly after this unworkable guidance was issued, the State of Florida

filed this lawsuit and the State of Alaska moved to intervene. [Dkt. 1, Dkt. 8]

---

[4]     *See* State of Alaska, Office of the Governor, "Report to White House: Alaska
Economy Devastated by CDC Decision on Cruise Ships," (April 8, 2021) (available
online at https://gov.alaska.gov/newsroom/2021/04/08/report-to-white-house-alaska-
economy-devastated-by-cdc-decision-on-cruise-ships/).

[5]     Exhibit 1 [Dkt. 8–1] is the Federal Maritime Commission's "Fact Finding
Investigation No. 30, COVID-19 Impact on Cruise Industry, Interim Report:
Economic Impact of COVID-19 on the Cruise Industry in Alaska, Washington, and
Oregon" dated October 20, 2020 and available online at
https://www2.fmc.gov/readingroom/docs/FFno30/2020_AK_WA_OR_FF30_Final_Int
erim_Report.pdf/).

[6]     Exhibits 13 and 14 to Florida's Motion for Preliminary Injunction show the
state of the guidance available as of April 2, 2020. The CDC has continually
updated its website as new guidance becomes available, so the state of the guidance
as of April 2, 2020 is no longer available on the CDC's website.

Florida also filed a Motion for Preliminary Injunction which the State of
Alaska supported in an amicus brief. [Dkt. 9, Dkt. 19-1]

After Florida filed its motion and Alaska filed its amicus brief, the CDC
issued a "dear colleague" letter to the cruise industry significantly changing
its position with regard to simulated voyages and port agreements. [Dkt. 31-
3] That letter stated that simulated voyages would *not* be required for vessels
that could confirm that 98% of crew and 95% of passengers were fully
vaccinated against COVID-19. *Id.* at 5. The letter also changed the CDC's
position with regard to two issues specifically raised by Alaska in its amicus
brief. [Dkt. 19-1 at 5-6, 10-11] First, it stated that the CDC would accept
multi-port agreements, particularly "if one port has limited medical or
housing capacity and a nearby port is able to supplement these capacities."
[Dkt. 31-3 at 3] Second, the CDC partially changed its position regarding
whether cruise operators could test for COVID-19 using lower-cost antigen
tests rather that higher-cost PCR tests by allowing for antigen tests for fully-
vaccinated crew. *Id.* at 5.

On May 5, the same day that its opposition to Florida's Motion for
Preliminary Injunction was due, the CDC issued extensive new guidance

regarding simulated voyages and passenger voyages.[7] [Dkt. 31-1 at 25, Dkt. 31-4] On May 11, the day before oral argument on Florida's Motion for Preliminary Injunction, the CDC again issued new guidance easing making, shore leave, and testing requirements for voyages with vaccinated passengers and crew.[8] The CDC has continued to issue new guidance and update prior guidance on an almost weekly basis since then, including on May 14 and 18.[9] Most recently, it updated its guidance on the day before mediation in this case was scheduled to take place, further easing masking rules for vaccinated passengers.[10]

Other than complying with the CDC's mandates, there was an additional obstacle to resumption of cruising in Alaska. All large cruise ships

---

[7]    U.S. Centers for Disease Control and Prevention, "CDC Issues Phases 2B and 3 of the Conditional Sailing Order" (May 5, 2021) (available online at https://www.cdc.gov/media/releases/2021/s0505-conditional-sailing-order.html).

[8]    Because the CDC's online guidance document has been updated multiple times since May 12, the version as it appeared on May 12 is no longer available online. However, the change was widely documented at the time. *See, e.g.* The Maritime Executive, "CDC Updates Guidance as Judge Hears Arguments in Florida's Case" (April 12, 2021) (available online at https://www.maritime-executive.com/article/cdc-updates-guidance-as-judge-hears-arguments-in-florida-s-case); "CDC lifts some mask rules for fully vaccinated cruise passengers," The Washington Post,  (April 12, 2021) (available online at https://www.washingtonpost.com/travel/2021/05/12/cruise-mask-rules-covid-cdc/).

[9]    *See* https://www.cdc.gov/quarantine/cruise/covid19-operations-manual-cso.html (listing "recent updates" of May 14, 18 and 26) (last visited June 1, 2021).

[10]    *Id.* (describing May 26 update as follows: "Provided cruise ship operators with more discretion regarding fully vaccinated travelers. Provided additional discretionary considerations for ships with at least 95% of crew and 95% of passengers fully vaccinated.")

that visit Alaska are foreign flagged, and the Passenger Vessel Services Act requires that foreign-flagged vessels stop in a foreign port on itineraries that visit U.S. ports. 46 U.S.C. § 55103 Alaska cruises have generally met this requirement by including a Canadian stop in their itineraries. Ex. 2 at 1.[11] However, in response to the pandemic, Canada has closed its ports to cruise ships through February of 2022. [Dkt. 46-11]

On May 24, President Biden signed into law the Alaska Tourism Restoration Act which makes a temporary exemption to the laws requiring Alaska-bound cruises to stop in Canada, provided that each Alaskan cruise ship meet certain conditions. P.L. 117-14, 135 Stat. 273 (May 24, 2021) One of the conditions specifically placed on Alaskan ships is that the ship

> (A) has been issued, operates in accordance with, and retains a COVID–19 Conditional Sailing Certificate of the Centers for Disease Control and Prevention; and
> (B) operates in accordance with any restrictions or guidance of the Centers for Disease Control and Prevention associated with such Certificate, including any such restrictions or guidance issued after the date of enactment of this Act. *Id.*

After passage of this Act, several cruise lines scheduled and began to market Alaska cruises for vaccinated passengers for late July-September of

---

[11]     Exhibit 2 [Dkt. 8-2] is a report by the Alaska Department of Revenue, *et al.,* "Impacts to Alaska from 2020/2021 Cruiseship Season Cancellation" dated April 9, 2021 and available online at https://gov.alaska.gov/wpcontent/uploads/sites/2/04082021-Cruise-Impacts-to-Alaska.pdf).

2021.[12] On information and belief, none of those cruise ships has yet received a Conditional Sailing Certificate from the CDC. On information and belief, the CDC has not yet approved any port or multi-port agreements for Alaskan ports scheduled to receive a visit from those cruise ships. Also on information and belief, the CDC will continue to issue new guidance and update prior guidance in the following weeks and months.

The State of Alaska benefits both directly and indirectly from the cruise industry. Direct revenue that the State of Alaska receives from cruise lines includes a per-passenger tax which the State which passes on to port-of-call municipalities. A.S. 43.52.200 *et seq.* It also includes environmental compliance fees that the State of Alaska receives directly from cruise lines. AS 46.03.480. The State of Alaska also receives revenue directly from cruise visitors, from such sources as non-resident hunting and fishing licenses, state park fees, and so forth. [Ex. 2 at 5]

On a macro level, cruising forms an important part of Alaska's economy. The cruise industry and the visitors it serves account for approximately $3.0 billion of the state's economy. [Ex. 2 at 2] Although this may not seem significant when compared to the size of Florida's industry, it

---

[12]     James Brooks, *Biden signs Alaska cruise ship bill as more cruise lines announce summer sailings*, Anchorage Daily News (May 24, 2021) (available online at https://www.adn.com/politics/2021/05/24/biden-signs-alaska-cruise-ship-bill-as-more-cruise-lines-announce-summer-sailings/).

is a very significant amount for Alaska. As stated in an Interim Report issued

by the Federal Maritime Commission in October 2020, regarding the

cancelation of Alaska's 2020 cruise season:

> In the case of Alaska, there exists an outsized economic impact
> from the cessation of cruise activity. While the symptoms are the
> same as in other parts of the United States, the impact is much
> greater because of Alaska's distance and economic reliance on the
> tourism industry and, at the micro level, the almost total reliance
> of some small towns (and native Alaskans) on the income
> generated by cruise tourism. [Ex. 1 at 4]

Alaska's port and cruise line related communities lost 22,297 jobs in

2020 equating to over $305.7 million in lost wages. [Ex. 2, at 7] These lost

wages and lost jobs impact Alaska by depleting the state's Unemployment

Reserve Trust. *Id.* In February 2020, the balance of this trust was $492.9

million; in March 2021, the balance of the trust was $265.8 million. *Id.* Of

this $227 million loss, $29.8 million is directly attributed to the cruise

industry.[13] *Id.*

The total amount of direct loss to the State of Alaska resulting from the

cancellation of the 2020 season was well in excess of one billion dollars, but

---

[13]     This was determined through analysis of change in unemployment claims
from port-of-call communities where employment is heavily dependent on tourism
in the first three quarters of 2020 (when Alaska cruise season employment takes
place), and corroborated by job loss surveys in those communities and analysis of
cruise industry employment in Alaska in 2019. [Ex. 2 at 8-9] The significant job loss
in these communities related to the cancellation of the 2020 cruise season was also
documented by the Federal Maritime Commission in its report. [Ex. 1 at 13, 21, 24,
29]

the impact to Alaska's communities was even greater. [Ex. 2 at 2] The loss of

the 2020 season had a particularly negative impact in Southeast Alaska,

where the economies of many communities are entirely dependent upon

tourism. *Id.* at 1. Interior Alaska also suffered from the loss of last year's

cruise season. It is estimated that over 160,000 cruise passengers would have

visited interior Alaska last summer—an area that includes places like Denali

National Park and Fairbanks. *Id.*

The partial resumption of cruising during the second half of Alaska's

short cruise season would be a great relief to Alaska, its port communities,

and its citizens.[14] But the gains are fragile, and incomplete.[15] The more cruise

ships and the more cruise passengers that visit Alaska this summer, the

better for Alaska, its affected municipalities, and its citizens.

---

[14]     State of Alaska, Office of the Governor, "Alaska Public/Private Partnership
Saves 2021 Cruise Season" (May 27, 2021) (available online at
https://gov.alaska.gov/newsroom/2021/05/27/alaska-public-private-partnership-
saves-2021-cruise-season/).

[15]     Liz Ruskin, *New rules allow cruises in Alaska. Here's why the season will still
be slow*, Alaska Public Media (May 21, 2021) (available online at
https://www.alaskapublic.org/2021/05/21/new-rules-allow-cruises-in-alaska-but-
tourism-businesses-remain-in-limbo/).

## ARGUMENT

Given recent developments, Alaska no longer seeks intervention as a matter of right under Federal Rule of Civil Procedure 24(a). However, given Alaska's material interests in the outcome of this litigation, and the CDC's constantly-evolving position apparently in response to events in this lawsuit, Alaska respectfully requests that this Court grant it permissive intervention under Federal Rule of Civil Procedure 24(b).

The Court may grant permissive intervention to a party who, on timely motion, asserts "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). This is wholly discretionary, but in exercising its discretion, the Court will consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.*

Under the terms of the Alaska Tourism Restoration Act, cruise ships visiting Alaska during the 2021 season will be required to obtain a Conditional Sailing Certificate from the CDC and abide by all CDC restrictions or guidance related to cruise ships, including restrictions or guidance issued after passage of the Act. P.L. 117-14, 135 Stat 273 (May 24, 2021) Given the CDC's recent and frequent changes to that guidance, apparently made in direct response to this lawsuit, it is reasonable to assume

that the CDC will continue to issue new guidance, and that this lawsuit will

continue to affect its decisions, and the timing of those decisions.[16]

The restrictions and guidance issued by the CDC may materially affect

the number of ships that visit Alaska in 2021 and/or the number of

passengers who decide to book cruises on those ships. For example, if the

CDC imposes onerous requirements, fewer people may choose to cruise to

Alaska due to the difficulty or discomfort of complying with these

requirements.[17] Finally, the CDC has not yet actually issued any Conditional

---

[16]     It is important to recognize that the CDC has changed its position in response to litigation events in this matter, not in response to court orders. For example, just days after Alaska's amicus brief raised the impracticability of port agreements with small Alaskan ports, the CDC changed its position to allow for multi-port agreements. [Dkt. 19-1 at 5-6, Dkt. 31-3 at 3] Thus, Alaska's ongoing participation in this litigation may be essential to protect Alaska's interests in the CDC's constantly-evolving process of issuing guidance.

[17]     For example, as of the morning of May 26, which was the day before mediation in this case was scheduled to take place, CDC guidance still required all cruise passengers to be masked while indoors on cruise ships, except in their cabins and for brief periods to eat and drink, regardless of their vaccination status. This was despite the fact that the CDC had previously issued a general statement that vaccinated people can safely unmask indoors in essentially all other scenarios. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. Some in the cruise industry expressed concern that this type of requirement would lead vaccinated consumers to choose other types of vacations or non-U.S. cruises, where they could be unmasked. *See, e.g.* The Cruise Hive, "The New Unrealistic CDC Rules Everyone is Talking About" (May 7, 2021) (quoting Norwegian Cruise Line CEO Frank Del Rio as stating, "I mean, can you imagine having to take on your mask and take off your mask in between bites of your meal or in between sips of a drink? It's absurd. It doesn't happen anywhere else in the world, anywhere else besides the United States") (available online at https://www.cruisehive.com/the-new-unrealistic-cdc-rules-everyone-is-talking-about/50551). On the night before mediation, the CDC changed its guidance to allow vaccinated passengers to be unmasked in most indoor cruise ship settings at the discretion of the cruise

Sailing Certificates, or approved any port agreements, for scheduled Alaska cruises so uncertainty remains.

Alaska's interests are also affected to the extent that Florida and the CDC will litigate, and this Court will consider, the meaning and effect of the Alaska Tourism Restoration Act. The CDC has recently filed a motion for leave to submit an additional brief regarding the impact of the Alaska Tourism Restoration Act on Florida's preliminary injunction motion and suggests that if this Court issues an injunction, that injunction would "end cruising in Alaska for the season." [Dkt. 67 at 3] The State of Alaska firmly disagrees with that analysis, and Rule 24(b) permissive intervention is appropriate to allow Alaska to protect its interests in this ongoing litigation

Thus, due to the unique nature of the Alaska Tourism Restoration Act—which affects only Alaska-bound cruises and not Florida or Texas-based cruises—Alaska's interests materially differ from Florida's and Texas's. Conditions in Alaska are also very different from conditions in Florida and Texas in other respects [Dkt. 8 at 20-22], and this Court would benefit from Alaska's perspective on the CDC's nation-wide order. Consideration of Alaska's unique circumstances would contribute to, rather than impede, a

---

operator. *See* https://www.cdc.gov/quarantine/cruise/covid19-operations-manual-cso.html.

reasoned determination of this action. *See League of Women Voters of Fla. v. Detzner*, 283 F.R.D. 687, 688 (N.D. Fla. 2012).

Thus, this Court should allow Alaska to intervene on a permissive basis to protect its unique interests. Alaska's intervention would neither prejudice the existing parties nor unduly delay the proceedings. The CDC has yet to answer the State of Florida's complaint, and Texas's motion to intervene has yet to be resolved. Alaska has limited its request for relief to declaratory judgment, so there is no danger of duplicative preliminary injunction motion practice if Alaska is allowed to intervene. It is appropriate to apply Federal Rule of Civil Procedure 24(b) to Alaska under these circumstances.

Dated June 2, 2021.

<div style="margin-left: 40%;">

TREG R. TAYLOR
ATTORNEY GENERAL

By:  */s/ Lael A. Harrison*
     Lael A. Harrison
     Assistant Attorney General
     Alaska Bar No. 0811093
     *(Pro Hac Vice)*

By:  */s/ Jessica M. Alloway*
     Jessica M. Alloway
     Assistant Attorney General
     *(Pro Hac Vice)*
     Alaska Bar No. 1205045
     1031 West Fourth Avenue,
     Suite 200
     Anchorage, AK 99501
     Telephone: (907) 269-5275
     Facsimile: (907) 276-3697

</div>

Email: lael.harrison@alaska.gov
Email: jessie.alloway@alaska.gov

Mohammad O. Jazil (FBN 72556)
mjazil@hgslaw.com
Edward M. Wenger (FBN 85568)
edw@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Phone: (850) 222-7500
Fax: (850) 224-8551

*Attorneys for the State of Alaska*

## Local Rule 3.01(g) certification

Pursuant to Local Rule 3.01(g), counsel for the State of Alaska has conferred with counsel for plaintiff and plaintiff does not oppose this motion. Counsel for the State of Alaska has also conferred with counsel for Defendants who take no position at present and reserve the right to oppose after review of the amended motion and amended complaint.

/s/ *Lael A. Harrison*
Lael A. Harrison

## CERTIFICATE OF SERVICE

I certify that on June 2nd, 2021 a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides notice to all parties.

<div align="right">

*/s/ Lael A. Harrison*
Lael A. Harrison

</div>