UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| STATE OF FLORIDA, | ) |
|     Plaintiff, | ) ) ) |
| and | ) ) |
| STATE OF ALASKA, | ) ) |
|     Plaintiff-Intervenor, | ) ) Case No.: 8:21-CV-839-SDM-AAS |
| v. | ) ) |
| XAVIER BECERRA, Secretary of Health and Human Services, in his official capacity; HEALTH AND HUMAN SERVICES; ROCHELLE WALENSKY, Director of Centers for Disease Control and Prevention, in her official capacity; CENTERS FOR DISEASE CONTROL AND PREVENTION; UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) ) ) ) ) |
|     Defendants. | ) ) |

**STATE OF ALASKA'S COMPLAINT FOR
DECLARATORY JUDGMENT**

**INTRODUCTION**

1. The State of Alaska, through the office of the Attorney General, brings this action for declaratory judgment as to the validity and legality of the U.S. Department of Health and Human Services (HHS), Centers for

1

Disease Control and Prevention's (CDC) October 31, 2020 Conditional Sailing Order and the technical guidance issued pursuant to that order.

## PARTIES

2. Plaintiff-Intervenor, the State of Alaska, is a sovereign state and has the authority and responsibility to protect its sovereignty, the wellbeing of its public fisc and the health, safety, and welfare of its citizens.

3. Plaintiff State of Florida is a sovereign state and has the authority and responsibility to protect its sovereignty, the wellbeing of its public fisc and the health, safety, and welfare of its citizens.

4. Defendants are the United States, appointed officials of the United States government, and United States governmental agencies responsible for the issuance and implementation of the challenged administrative actions.

5. Defendant CDC is a component of the Department of Health and Human Services.

6. Defendant Department of Health and Human Services is an agency of the United States.

7. Defendant Rochelle Walensky is the Director of the CDC and is being sued in her official capacity.

8. Defendant Xavier Becerra is the Secretary of HHS and is being sued in his official capacity.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The judicial review provisions of the APA waive sovereign immunity of the Federal government, and provide the right of judicial review for persons suffering a legal wrong because of agency action or who are adversely affected or aggrieved by agency action within the meaning of a relevant statute. 5 U.S.C. § 702–706.

10. The APA authorizes this Court to decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an agency action, and to hold unlawful and set aside agency action that is not in accordance with law or is in excess of statutory authority. 5 U.S.C. § 706.

11. The Court is authorized to award the requested declaratory relief 5 U.S.C. § 706, and 28 U.S.C. §§ 2201–02.

12. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this action is brought against officers of agencies of the United States in their official capacities and the actions and decisions challenged by this lawsuit were made, at least in part, in Florida and have a direct impact on the State of Florida. Venue lies in this district because Tampa Bay is a major cruise port and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

13. Alaska is a major cruise destination. In 2019, more than one million people visited Alaska by cruise ship.

14. The State of Alaska derives direct revenue from the cruise industry and in the form of state taxes, fishing and hunting licenses, state park fees, passenger related revenues, and environmental compliance fees. State taxes include a per-passenger tax paid directly by cruise lines to the State of Alaska, revenues from which are passed on to municipalities. A.S. 43.52.200 *et seq*. Environmental compliance fees are also paid directly by cruise lines to the State of Alaska. AS 46.03.480.

15. Alaska's port communities visited by cruise lines also derive direct revenue from the cruise industry in the form of moorage and port fees, sales tax, and other revenue.

16. In 2019, thousands of jobs in Alaska were directly dependent on cruise tourism, and cruise tourism accounted for significant economic activity in the state.

17. Alaska's cruise season is limited by weather, with most ships visiting between May and September each year.

18. In March of 2020, in response to the global COVID-19 pandemic, the CDC issued a No Sail Order and Suspension of Further Embarkation. This order applied to passenger-carrying vessels with a carrying capacity of

250 or more individuals operating in waters subject to the jurisdiction of the United States with an itinerary anticipating an overnight stay for passengers or crew. 60 Fed. Reg. 16628. The CDC renewed the No Sail Order in separate orders issued on April 9, July 16, and September 20, 2020. *See* 85 Fed. Reg. 21004, 85 Fed. Reg. 44085, 85 Fed. Reg. 62732.

19. The CDC cited §§ 361 and 365 of the Public Health Service Act, 42 U.S.C. §§ 264, 268 and 42 C.F.R. §§ 70.2, 71.31(b), and 71.32(b) as authority for the No Sail Orders. 85 Fed. Reg. at 62737.

20. As a result of the pandemic, most cruise lines also voluntarily suspended cruising until October of 2020.

21. Alaska's summer 2020 cruise season was cancelled. Alaska and its port-of-call municipalities lost direct revenues, and the State paid significant amounts in unemployment benefits to laid-off workers whose employment was dependent on the cruise tourism industry. Further, the State of Alaska lost millions of dollars into its economy through job creation, cruise passenger on-shore spending and other direct and indirect effects.

22. On October 30, 2020, the CDC issued a "Conditional Sailing Order" that promised a "phased resumption of cruise ship passenger operations." 85 Fed. Reg. 70153, 70163. The initial phase consisted of testing and additional safeguards for crew members while the CDC ensures operators build the laboratory capacity needed to test future passengers.

Subsequent phases would include "simulated voyages," certification for ships that meet specific requirements, and resumption of passenger voyages.

23. On April 2, 2021, the CDC issued technical guidance for Phase 2a of its phased approach (simulated voyages), and imposed additional requirements under Phase 1.

24. The April 2, 2021 technical guidance was unclear, incomplete and unworkable as a practical matter. It did not provide a path to resumption of cruising in time for any part of Alaska's cruise season.

25. On April 28, 2021, the CDC issued a "dear colleague" letter to cruise industry associates giving further guidance regarding simulated voyages. This letter advised, among other things, that cruise operators requiring 95% of passengers and 98% of crew to be fully vaccinated against COVID-19 will not have to undergo the simulated voyages phase before resuming passenger voyages.

26. On May 5, May 12, May 18, and May 26 the CDC issued further guidance regarding simulated voyages and resumption of passenger voyages. On information and belief, further guidance will be forthcoming in the weeks following the date of this Complaint.

27. The majority of cruise passengers that visit Alaska do so on foreign flagged vessels which are subject to 46 U.S.C. § 55103, also known as the Passenger Vessel Services Act. The Passenger Vessel Services Act

6

requires foreign-flagged, passenger-carrying vessels to stop in a foreign port on voyages that stop in U.S. ports. Typically, foreign flagged cruise ships with Alaska itineraries meet this requirement by stopping in one or more Canadian ports.

28. Canada has closed its ports to Alaska-bound cruise ships due to COVID-19 through February of 2022.

29. On May 24, 2021 President Biden signed into law the Alaska Tourism Restoration Act which temporarily waives the foreign-stop requirements of the Passenger Vessels Services Act for Alaska-bound cruises, on conditions. One of those conditions is that cruise ships obtain a Conditional Sailing Certificate from the CDC and operate in compliance with that certificate, including with restrictions and guidance issued after the date of the Act.

30. As a result of the Alaska Tourism Restoration Act and the updates to the CDC's guidance, several cruise lines have scheduled one or more vessels for Alaska itineraries for late July-September of 2021.

31. On information and belief, as of the date of this complaint, the CDC has not yet issued conditional sailing certificates for any of the vessels scheduled to visit Alaska this summer.

32. On information and belief, as of the date of this complaint, the CDC has not yet approved any port or multiport agreements for Alaskan ports scheduled to receive cruise ship visits this summer.

33. On information and belief, more ships would visit Alaska, and/or more passengers would book cruises on ships already scheduled to visit Alaska, if the conditions imposed by the CDC's Conditional Sailing Certificates were less onerous.

34. More cruise ships and cruise passengers visiting Alaska this summer means more direct revenues to the State of Alaska and port-of-call municipalities, fewer unemployed cruise tourism workers drawing unemployment benefits, and greater overall benefits to Alaska's economy.

## CLAIM FOR RELIEF
### (Violation of the Public Health Services Act and the APA)

35. Alaska incorporates by reference each of the allegations in paragraphs 1 through 33.

36. The APA provides that courts shall set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706.

37. The CDC's Conditional Sailing Order and technical guidance are contrary to the Public Health Services Act and related regulations, an abuse

of discretion, and arbitrary and capricious, and therefore must be set aside. 42 U.S.C. §§ 264, 268; 42 C.F.R. §§ 70.2, 71.31(b), 71.32(b); 5 U.S.C. § 706.

38. Further, the APA requires federal agencies to provide notice and comment on substantive rules that affect individual rights and obligations. 5 U.S.C. §553. The CDC has failed to comply with this requirement for any aspect of the Conditional Sailing Order and guidance issued under it.

39. The CDC's open-ended "request for information" published on July 20, 2020 did not satisfy the requirements of the Administrative Procedures Act. Among other things, it gave no notice of either the terms or substance of the proposed rule.  *See* 85 C.F.R. 44083-02; 5 U.S.C. §553

## PRAYER FOR RELIEF
### (Declaratory Judgment)

For the foregoing reasons, the State of Alaska respectfully requests that this Court enter declaratory judgment that all or part of the CDC's Conditional Sailing Order and guidance issued under it is invalid and/or unlawful, award Alaska its costs of litigation and attorneys' fees to the extent recoverable under applicable law, and grant Alaska such further relief as may be just and equitable.

Dated June 2, 2021.

           TREG R. TAYLOR
           ATTORNEY GENERAL

By:   */s/ Lael A. Harrison*
      Lael A. Harrison
      Assistant Attorney General
      Alaska Bar No. 0811093
      *(Pro Hac Vice)*

By:   */s/ Jessica M. Alloway*
      Jessica M. Alloway
      Assistant Attorney General
      *(Pro Hac Vice)*
      Alaska Bar No. 1205045
      1031 West Fourth Avenue, Suite 200
      Anchorage, AK 99501
      Telephone: (907) 269-5275
      Facsimile: (907) 276-3697
      Email: lael.harrison@alaska.gov
      Email: jessie.alloway@alaska.gov

      Mohammad O. Jazil (FBN 72556)
      mjazil@hgslaw.com
      Edward M. Wenger (FBN 85568)
      edw@hgslaw.com
      HOPPING GREEN & SAMS, P.A.
      119 South Monroe Street, Suite 300
      Tallahassee, Florida 32301
      Phone: (850) 222-7500
      Fax: (850) 224-8551

      *Attorneys for the State of Alaska*