UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE OF FLORIDA,

   *Plaintiff*,

v.                                                       Case No. 8:21-cv-839-SDM-AAS

BECERRA, *et al.*,

   *Defendants*.

_____

**FLORIDA'S RESPONSE TO DEFENDANTS' MOTION FOR
LEAVE TO FILE SUPPLEMENTAL BRIEF AND DECLARATION**

**1.** Florida does not object in principle to Defendants' request for supplemental briefing on the Alaska Tourism Restoration Act ("ATRA"). *See* Doc. 67 at 1 (citing Pub. L. No. 117-14, 117th Cong.). Florida is, however, concerned that further briefing will only serve to delay a ruling on Florida's motion for preliminary injunction. With each passing day that cruises—a singled-out industry—cannot operate, Florida suffers irreparable harm. As Florida's cruise lines and ports address the CDC's constantly changing labyrinth of requirements for safety plans and simulations, and businesses and employees suffer, time is of the essence.

Since Defendants briefly staked out their position on ATRA in their request, Florida briefly stakes out its position here and hopes this is sufficient to avoid the need for further briefing and delay.

1

*First*, by its plain text, ATRA applies only to Alaskan ships. *See* § 2(a)–(b). If anything, that helps Florida. In ATRA, Congress expressly conditioned a Jones Act exception for Alaskan cruise ships on compliance with the CDC's orders. The only way to give meaning to that requirement is to assume what Florida has already explained—that the CDC lacks the authority it claims and needed congressional action to allow it to apply its unlawful orders to Alaskan ships. Because ATRA does not address Florida ships, the most plausible inference is that Congress decided *not to ratify* the CDC's conduct as to Florida.

*Second*, the principal authorities Florida relies on in this case address a similar ratification issue with respect to the CDC's moratorium on evictions. The alleged ratification in those cases was not state-specific as it is here, and yet those courts still found no ratification. *See Tiger Lily, LLC v. HUD*, 992 F.3d 518, 524 (6th Cir. 2021); *Skyworks, Ltd. v. CDC*, No. 5:20-cv-2407, 2021 WL 911720, at *12 (N.D. Ohio Mar. 10, 2021); *Ala. Ass'n of Realtors v. HHS*, --- F.3d ---, 2021 WL 1779282, at *8–9 (D.D.C. May 5, 2021).[1] The reasoning in those cases applies equally here. Put simply, "nothing in [ATRA] expressly approved the agency's interpretation" of § 264(a). *Tiger Lily*, 992 F.3d at 524.

---

[1] Today, the D.C. Circuit denied the plaintiffs' motion to vacate the stay of the injunction in the *Alabama Association of Realtors* case, which the district court had entered. *See Ala. Ass'n of Realtors v. HHS*, No. 21-5093, slip op. at 1 (D.C. Cir. Jun. 2, 2021). Insofar as the D.C. Circuit found congressional ratification, *id.* at 3, that case is distinguishable given the state-specific nature of ATRA, as discussed above.

Thus, at most, ATRA reflects "mere congressional acquiescence," which falls short of ratification, "especially given the plain text of" the statute. *Id.*

*Third*, even if Defendants were right about the import of ATRA in this case (they are not), this development would render the non-delegation doctrine issue far worse. By requiring compliance with "*any* restrictions or guidance" from the CDC, § 2(a)(1)(B) (emphasis added), Defendants' reading of ATRA would eliminate even the razor-thin intelligible principles the CDC struggled to identify at the hearing. In fact, it would be among the most egregious—if not the most egregious—delegation to the administrative state in the history of the Republic. Just as the Court should interpret § 264(a) to avoid that problem, *see Tiger Lily*, 992 F.3d at 523, it should do the same with ATRA.

**2.** Florida does not object to this Court taking judicial notice of publicly available materials related to the CDC's latest actions. These materials further demonstrate Florida's point in this case—that the CDC, in addition to overstepping its authority, is moving the goalposts every day and making it impossible for cruise ships to resume sailing. Florida objects, however, to Defendants filing a supplemental declaration or a supplemental brief on the CDC's constantly changing guidance. The CDC's evolving requirements on testing, masks, communications, vaccinations, and simulations, among others, only reiterate Florida's concerns. If the parties must re-litigate the case every time the CDC moves the target, they will be filing supplemental briefs and

declarations at least until the Conditional Sailing Order expires in November, perhaps longer.

Meanwhile, Florida is suffering irreparable harm every day,[2] and the rest of the country—even in places like California[3]—will soon be back to normal. With no basis in fact or law, the cruise industry is being singled out. Worse, the CDC did almost nothing to move towards reopening until Florida filed suit. Now, the CDC argues that it is moving. Florida is skeptical, and this Court should be as well. While some companies may attempt to bear the costs associated with the CDC's illegal and opaque requirements, the CDC's illegal orders remain in effect with no clear end in sight. Florida requests that the Court promptly enjoin the CDC's unlawful acts. One thing is now clear—the prospect of judicial action is the only thing that spurs the CDC forward.

---

[2] Defendants briefly allude to Florida's law prohibiting businesses from requiring customers to show proof of vaccines and suggest that Florida's law means it is not irreparably harmed by the CDC's actions. Doc. 67 at 3 & n.1. But Defendants expressly disavowed any attempt to preempt Florida's statute at the hearing. Doc. 47 at 108–10. Further, the cruise industry's ability to sail safely without a vaccine requirement is demonstrated by successful cruising in Europe dating back to August 2020. And, in any event, any conflict between the CDC's instructions to the industry and Florida's statute should be resolved in favor of Florida. Florida's statute is a valid exercise of its police power, while the CDC's orders are an ultra vires overreach by a federal agency.

[3] https://www.latimes.com/california/story/2021-05-21/california-june-15-reopening-covid-guidelines-what-to-know (showing a June 15 reopening).

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival* (FBN 1016188)
DEPUTY ATTORNEY GENERAL FOR LEGAL POLICY
*Lead Counsel

Jason H. Hilborn (FBN 1008829)
ASSISTANT SOLICITOR GENERAL

Anita Patel (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
jason.hilborn@myfloridalegal.com

*Counsel for the State of Florida*

June 2, 2021

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of June, 2021, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides notice to all parties.

/s/ *James H. Percival*
James H. Percival
