UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE OF FLORIDA,

    Plaintiff,

v.

XAVIER BECERRA, Secretary of the Dep't of Health and Human Services, *et al.*,

    Defendants.

Case No. 8:21-cv-839-SDM-AAS

**DEFENDANTS' SUPPLEMENTAL BRIEF**

Recent developments weigh heavily against a preliminary injunction for at least two reasons: Congress has now ratified the Conditional Sailing Order ("CSO"), the agency action being challenged here; and recent CDC and industry actions underscore Plaintiff's failure to establish any injury, much less an irreparable one.

**1.     Ratification**.  Plaintiff cannot establish a likelihood of success on the merits because Congress recently ratified the CSO in the Alaska Tourism Restoration Act, which provides temporary standards for the operation of certain cruise ships in Alaska. *See* Pub. L. No. 117-14, 117th Cong. (May 24, 2021) ("ATRA"). It is well-established that "Congress 'has the power to ratify the acts which it might have authorized' in the first place." *See, e.g.*, *Thomas v. Network Sols., Inc.*, 176 F.3d 500, 506 (D.C. Cir. 1999). For example, even an act of appropriation may ratify a pre-existing agency action or interpretation where the circumstances show that Congress

1

intended to incorporate the "precise authority" being claimed. *See Ex parte Endo*, 323 U.S. 283, 303 n.24 (1944); *Schism v. United States*, 316 F.3d 1259, 1289 (Fed. Cir. 2002) (surveying case law); *cf. Broward Bulldog, Inc. v. DOJ*, 939 F.3d 1164, 1182 (11th Cir. 2019) (finding that Congress ratified judicial interpretation of statute when it referred to that standard in subsequent legislation). Even where Congress has not acted expressly, "an agency's interpretation of a statute may be confirmed or ratified by subsequent congressional failure to change that interpretation." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 45 (1983).

Prior to ATRA, the Passenger Vessel Services Act of 1886, Pub. L. No. 49-421 ("PVSA"), effectively prohibited a return to cruising in Alaska. The PVSA prohibits foreign-flagged vessels (i.e., all cruise ships subject to the CSO in Alaska) from traveling between U.S. ports unless they make a stop at a foreign port. *See* 46 U.S.C. § 55103. To comply with this law, Alaskan cruise itineraries have typically included a stop at a Canadian port. But due to COVID-19, Canadian law currently bars cruise ships from operating in Canadian waters until at least February 28, 2022. *See* Defs.' PI Ex. 11, ECF No. 46-11. Accordingly, the PVSA effectively prevented any cruising in Alaska until February 2022. ATRA temporarily permits "covered cruise ships" to meet an alternative standard, where a "covered cruise ship" is defined as one that "has been issued, operates in accordance with, and retains a COVID–19 Conditional Sailing Certificate of the [CDC]" and "operates in accordance" with that Certificate. ATRA § 2(a), (b). ATRA further provides that it does not apply "during any period

for which the Director of the [CDC] has issued an order under [42 U.S.C. §§ 264 and 268] that requires covered cruise ships to suspend vessel operations." *Id*. § 2(e).

ATRA is an express ratification of the CSO, and is fatal to Florida's case. Congress was not only aware of the CSO; it expressly incorporated it into ATRA, defining covered cruise ships as those that had received a "Conditional Sailing Certificate" under the CSO. Indeed, Congress went further, expressly affirming that the CDC could issue an order to "suspend vessel operations" entirely. By incorporating the CSO into ATRA, Congress not only confirmed that the CDC had the statutory authority to issue the order, but also extinguished Florida's APA claims, *see, e.g.*, *James v. Hodel*, 696 F. Supp. 699, 701 (D.D.C. 1988) ("Once Congress has thus ratified agency action by statute, even if that action had been arbitrary and capricious, judicial review requires a challenge to the statute itself."), *aff'd sub nom. James v. Lujan*, 893 F.2d 1404 (D.C. Cir. 1990), and removed any nondelegation concerns.[1]

Florida is mistaken to suggest that its absence from ATRA shows that Congress intentionally refused to ratify the CSO as to it. *See* ECF No. 69, at 2. Cruise ships in Florida did not need the protection of ATRA because nearby foreign ports are not closed to ships, so there was no reason for Congress to apply the "Alaska Tourism Restoration Act" there. Regardless, it makes no sense to presume that

---

[1] And even if this were not an express ratification of the CSO, it is at least an implicit one. Congress was familiar with the NSOs and the CSO; far from restraining that claimed authority, it incorporated these CDC actions into a current statutory standard.

Congress somehow intended to *circumscribe* authority when the text of the statute requires the opposite—an assumption that the CSO in general was validly issued.

Equally misplaced is Florida's reliance on the CDC eviction moratorium cases, which arise in a very different context. *See* Defs.' Opp'n at 31 (distinguishing eviction cases). There, some courts have opined that Congress's one-month extension of the eviction moratorium did not amount to a ratification, reasoning that Congress effectively "withdrew" its support upon expiration of the extension. *See, e.g.*, *Ala. Ass'n of Realtors v. HHS*, No. 20-cv-3377, 2021 WL 1779282, at *9 (D.D.C. May 5, 2021) ("*AAR*"). But the D.C. Circuit recently concluded otherwise. *See AAR*, No. 21-5093, 2021 WL 2221646, at *2 (D.C. Cir. June 2, 2021) ("Congress deliberately chose legislatively to extend the HHS moratorium and, in doing so, specifically to embrace HHS's action"). In any event, the same ratification analysis does not apply to ATRA, in which Congress explicitly incorporates the agency's interpretation of its own authority, and has not arguably "withdrawn" its support.[2]

2.   **Factual Developments.** Recent factual developments further undermine Plaintiff's arguments for standing and irreparable harm. As set forth in the attached Supplemental Declaration of Capt. Aimee Treffiletti, as of June 4, 2021,

---

[2] Florida's suggestion that ATRA improves their nondelegation argument is incorrect. No plausible nondelegation claim can lie where Congress has approved the specific exercise of agency authority. Moreover, the CDC remains constrained by the "requirement that the regulatory measures adopted be 'necessary to prevent the introduction, transmission, or spread of communicable diseases,' 42 U.S.C. § 264(a), [which] provides an intelligible principle that guides the agency's authority." *AAR*, 2021 WL 2221646, at *3. Plaintiff also misreads the text. ATRA does not authorize CDC to issue "any restrictions or guidance*" in vacuo*, but further requires that, for purposes of ATRA, the restrictions be "associated with [a 'COVID-19 Conditional Sailing] Certificate.'" *See* ATRA § 2(a).

the CDC has continued to consult with and provide technical assistance to the industry, and has updated the guidance in ways that have "reduced burdens or alleviated restrictions on cruise lines to better reflect the improved public health situation." Supp. Treffiletti Decl. ¶ 5. The CDC has also approved port agreements covering 22 vessels at 5 ports of call (and is reviewing agreements for 6 additional vessels); has approved or provisionally approved 11 requests to conduct simulated voyages; and has received and provisionally approved 2 conditional sailing certificates for highly vaccinated cruises. *Id.* ¶¶ 2-4. Cruising is on track to resume by mid-summer, and Florida cannot establish an irreparable injury that would occur in the absence of an injunction. Plaintiff's original motion was premised on the misconception that an "industry" was "shut down" indefinitely. That was never a valid characterization of the CSO, and it is demonstrably not the case now.

The speculative nature of Florida's "injury" is further underlined by the fact that the requested injunction would (a) effectively end cruising in Alaska for the season (because ATRA only benefits ships operating with a Conditional Sailing Certificate under the CSO); (b) cast considerable additional doubt on public confidence in the industry, particularly in Florida, which is publicly battling with the industry over its own laws;[3] and (c) otherwise undermine the carefully laid plans for the safe resumption of passenger operations.

Dated: June 7, 2021                                  Respectfully submitted,

---

[3] *See* "Cruise lines and Florida Gov. DeSantis square off over vaccine passports," *NBC News* (May 31, 2021), https://www.nbcnews.com/politics/2020-election/cruise-lines-florida-gov-desantis-square-over-vaccine-passports-n1269029 (last visited June 1, 2021).

BRIAN D. NETTER
Deputy Assistant Attorney General

ERIC BECKENHAUER
Assistant Branch Director
Federal Programs Branch, Civil Division

*s/ Amy E. Powell*
AMY ELIZABETH POWELL
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
Federal Programs Branch
Civil Division, Department of Justice
1100 L. Street, NW
Washington, DC 20530
Phone: 202-514-4964
Email: Liam.C.Holland@usdoj.gov

*Counsel for Defendants*