UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE OF FLORIDA,

    *Plaintiff*,

    v.　　　　　　　　　　　　　　　Case No. 8:21-cv-839-SDM-AAS

BECERRA, *et al.*,

    *Defendants*.

_____

**FLORIDA'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF**

**1.** In claiming that ATRA ratified the CSO, Defendants face "a difficult task." *Collins v. Mnuchin*, 938 F.3d 553, 572 (5th Cir. 2019) (en banc). Courts recognize "congressional acquiescence" with "extreme care," *Solid Waste Agency v. U.S. Army Corps*, 531 U.S. 159, 169 (2001), and Defendants cannot show that Congress "expressly ratif[ied]" their actions "in clear and unequivocal language." *EEOC v. CBS*, 743 F.2d 969, 974 (2d Cir. 1984).

*First*, ATRA is a classic example of legislative compromise. It was designed only to solve a specific problem for Alaska, not to ratify Defendants' conduct. The legislative history makes that clear.[1] For example, Senator Sullivan of Alaska said the following:

---

[1] While the relevance of legislative history is subject to debate, if it is ever relevant, it is in cases assessing ratification. *See, e.g.*, *Solid Waste Agency*, 531 U.S. at 170–71.

1

> So we were going to each Senator and saying: Look, we know you have big, philosophical differences on some things that relate tangentially to this issue, but right now this issue is very narrow. Help us help our constituents. That is it. It is not going to impact any other State. And to our colleagues' credit, all of them said: OK, Senator Murkowski, Senator Sullivan, we will help.[2]

*Second*, the text of ATRA does not even mention the CSO. Instead, ATRA references a COVID-19 Conditional Sailing Certificate. *See* § 2(a)(1). At most, this ratifies the CDC's power to require such a certificate as part of its free pratique power. It does not say what the content of the CDC's requirements should be, as that continues to be determined by the scope of the CDC's authority under applicable law.[3] When Congress wants to ratify agency conduct it does so clearly.[4] ATRA lacks that clarity.[5] *See Tiger Lily, LLC v. HUD*, 992 F.3d 518, 524 (6th Cir. 2021); *Skyworks, Ltd. v. CDC*, 2021 WL 911720, at *12 (N.D. Ohio Mar. 10, 2021); *Ala. Ass'n of Realtors v. HHS*, 2021 WL 1779282, at *8–9 (D.D.C. May 5, 2021).

---

[2] 167 Cong. Rec. S2512 (daily ed. May 13, 2021) *available at* https://www.congress.gov/117/crec/2021/05/13/167/83/CREC-2021-05-13-pt1-PgS2510.pdf.

[3] Defendants' concession that they remain bound by § 264 is unsurprising. *See* DE 72 at 4 n.2. But given that concession, it is unclear what work Defendants believe ATRA is doing.

[4] *E.g.*, *Thomas v. Network Sols.*, 176 F.3d 500, 505–07 (D.C. Cir. 1999) (express words of ratification); *Mainstream Mktg. Servs. v. FTC*, 358 F.3d 1228, 1250 (10th Cir. 2004) (same).

[5] Defendants claim that, in another provision of ATRA, *see* § 2(f), "Congress . . . expressly affirm[ed] that the CDC could issue an order to 'suspend vessel operations' entirely." DE 72 at 3. Notably, the word "entirely" does not appear in ATRA, but is Defendants' addition. And Florida has never contested that certain orders authorized by § 264 may have the effect of "suspend[ing] vessel operations" for some period of time, such as for the time necessary for "fumigation" or "pest extermination." *See* 42 U.S.C. § 264(a). The question continues to be the scope of the CDC's power under § 264, and § 2(f) says nothing about that.

*Third*, even if ATRA had ratifying force (it does not), it would not ratify the CDC's conduct here. ATRA applies to Alaskan ships, not Florida ships. *See* § 2(a)–(b). As a condition for a Jones Act exception for those ships, Congress now requires them to comply with certain CDC orders. If anything, that helps Florida. Recall what the CDC's position is in this case—that all ships, including Alaskan ships, already must comply with its orders. Thus, if Defendants are correct that ATRA is a ratification, it reflects severe congressional misgivings regarding the legality of the CDC's conduct. *See CBS*, 743 F.2d at 974 (Congress's "ratifying legislation must recognize that the actions involved were unauthorized when taken."); *accord Schism v. United States*, 316 F.3d 1259, 1289 (Fed. Cir. 2002). And it reflects an effort to ameliorate that issue *only in Alaska*.[6] *See Schism*, 316 F.3d at 1289 (ratification can be given "as to some or all persons"); *accord Ex parte Endo*, 323 U.S. 283, 303 n.24 (1944) ("Congress may support the effort to take care of these evacuees without ratifying every phase of the program.").[7]

**2.** Developments since Florida filed suit only make matters worse.

*First*, the CDC is coercing the cruise industry into following its

---

[6] Defendants say that there was no reason for ATRA to reference Florida. But that misses the point. If Defendants are right that Congress thought that the CSO was lawful, then there was no reason to reference the CDC's actions at all.

[7] If the Court disagrees, the non-delegation issues would be far worse. *See* DE 69 at 3.

3

vaccinated-cruise requirements. The CDC claims to offer two options:

**Option 1**: Cruise with 95% vaccinated passengers and crew. Under this option, cruise ships can skip the burdensome and expensive self-funded test sails, and passengers are essentially subjected to the same protocols as on land.

**Option 2**: Complete test sailing for every ship—which costs tens of millions of dollars per brand—and obtain subsequent CDC approval. Even then, cruise ships must comply with burdensome protocols that no longer apply on land, including masking and social distancing.[8] For example, the CDC requires passengers who are in a pool or hot tub to "maintain physical distancing of 6 feet."[9] The CDC also requires ships to "modify meal service and entertainment venues to facilitate social distancing."[10]

It is now clear that the CDC is not taking seriously the promises of the CSO, but is instead making test sailing so onerous that cruise lines must require near-universal vaccinations.[11] This raises several issues: (A) The CDC does not have the authority to impose vaccination on cruisers. And they know this—that is why they are framing it as an alternative. But the vaccination

---

[8] https://www.cdc.gov/quarantine/cruise/covid19-operations-manual-cso.html.

[9] https://www.cdc.gov/quarantine/cruise/covid19-operations-manual-cso.html.

[10] https://www.cdc.gov/quarantine/cruise/ti-simulated-voyages-cso.html.

[11]    https://www.floridaphoenix.com/2021/06/07/some-cruise-lines-are-sticking-to-required-vaccines-for-passengers-despite-royal-caribbean-reversal/ (in which the Carnival President explains that "the current CDC requirements for cruising with a guest base that is unvaccinated will make it very difficult to deliver the experience our guests expect").

"option" operates as a requirement. (B) This option discriminates against families. Cruising is a family activity, but the 95% vaccination requirement counts kids, and therefore, excludes families. (C) The vaccination requirement would force cruise ships to violate Florida (and Texas) law, even though the CDC expressly disavowed any attempt to preempt Florida law at the hearing. (D) The CDC's Option 2 requirements make sailing at full capacity impossible. Thus, the only way for cruise lines to make a reasonable profit is to adopt the illegal and untenable vaccine requirements.

*Second*, the information in the CDC's new affidavit only demonstrates the CDC's further delay. For example, the CDC admits that 28 ships have submitted port agreements for approval, but only 9 have been approved for test sailing. DE 72-1 at 2. And some of the Phase 2 *test* sails are not scheduled until as late as August, *id.* at 3, even though, at the hearing, the CDC repeatedly emphasized Phase 4 sailing would resume in July, DE 47 at 70.

Cruise companies are trying their best to work with the CDC because they have no choice. But make no mistake—the CDC continues its overreach, and Florida's irreparable harm increases by the day.[12]

---

[12] Defendants' contention that granting Florida relief would "effectively end cruising in Alaska" makes little sense. DE 72 at 5. *First*, all ATRA requires of Alaskan ships is a certificate, and vacating the CSO would not prevent the CDC from providing such a certificate. *Second*, even if Defendants were correct, the Court can solve that issue by limiting injunctive relief to Florida. *See* DE 31 at 45 (arguing for exactly that).

5

Respectfully submitted,

Ashley Moody
ATTORNEY GENERAL

John Guard
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James H. Percival*
James H. Percival* (FBN 1016188)
DEPUTY ATTORNEY GENERAL FOR LEGAL POLICY
*Lead Counsel

Jason H. Hilborn (FBN 1008829)
ASSISTANT SOLICITOR GENERAL

Anita Patel (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
jason.hilborn@myfloridalegal.com

*Counsel for the State of Florida*

June 9, 2021

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of June, 2021, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides notice to all parties.

/s/ *James H. Percival*
James H. Percival
