IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| STATE OF FLORIDA,<br> *Plaintiff*,<br><br>v.<br><br>XAVIER BECERRA, Secretary of Health and Human Services, in his official capacity; HEALTH AND HUMAN SERVICES; ROCHELLE WALENSKY, Director of the Centers for Disease Control and Prevention, in her official capacity; CENTERS FOR DISEASE CONTROL AND PREVENTION; The UNITED STATES OF AMERICA,<br> *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    Civil Action No. 8:21-CV-00839 |

**THE STATE OF TEXAS' COMPLAINT IN INTERVENTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

**INTRODUCTION**

1. The State of Texas (Texas) files this complaint in intervention in the above captioned case. Texas has a justiciable interest in the outcome of the case that is not adequately represented by the current parties in this case. Fed. R. Civ. P. 24(a)(2).

2. Texas brings this action to challenge the Conditional Sailing Order issued by the Centers for Disease Control (CDC) and Health and Human Services (HHS) on October 30, 2020 and the subsequent April 2, 2021 guidance on that order.

3. The CDC cited to 42 U.S.C. § 70.2 as authority to issue its Conditional Sailing Order. 85 Fed. Reg. 70153, 70160 (Nov. 4, 2020).

4. The CDC's cited authority to take its action under 42 U.S.C. § 70.2 is a purported "determination that the measures taken by health authorities of any State or possession . . . are insufficient to prevent the spread of . . . communicable diseases." 42 U.S.C. § 70.2.

5. Based on this standard, the interests of Texas cannot be represented by any other state.

6. Further, Texas has unique interests at stake with regard to the Conditional Sailing Order.

7. A substantial portion of the world's oil is produced in Texas. Oil production, transfer, and refining are major industries in Texas. Florida has limited in-state oil production, and this constitutes a far less significant part of Florida's economy as compared to Texas' economy. While the cruise industry remains unable to sail, the decreased demand for "bunker" (marine) fuel has the potential to harm Texas' economy.[1]

8. Texas derives significant tax revenue related to cruises from oil as well as from the tourism sector related to cruises. Because Texas does not have a state income tax, this sales tax revenue is of particular significance to Texas' public

---

[1] https://www.houstonchronicle.com/business/energy/article/Huge-shift-to-cleaner-fuels-a-jackpot-for-Texas-13543194.php

fisc and economy.[2]

9. The Port of Galveston, from where Texas commercial cruises depart and arrive, is uniquely prepared to quickly respond to a COVID-19 outbreaks on a cruise ship should the need arise. The port is located within a mile of a National Biosafety Level 4 Laboratory; and the port has previously activated its Infectious Disease Management Plan in response to a potential Ebola outbreak on a ship. Furthermore, the port was ahead of the curve in holding a training exercise to deal with a COVID-19 outbreak on a cruise ship in March 2020 prior to the industry being grounded.  Ex. 2 at 7.

10. Texas contends that the Conditional Sailing Order violates the Administrative Procedure Act (APA), 5 U.S.C. §§ 551, et seq.

11. Texas brings a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, seeking a declaration that HHS and the CDC have exceeded their authority under the Public Health Service Act (42 U.S.C. §§ 264, 268) and 42 C.F.R. parts 70 & 71.

12. Texas seeks declaratory and temporary and permanent injunctive relief.

---

[2] https://www.dallasfed.org/research/swe/2020/swe2003/swe2003b.aspx

## PARTIES

13. Plaintiff-Intervenor, the State of Texas, is a sovereign state and has the authority and responsibility to protect its sovereignty, the wellbeing of its public fisc, and the health, safety, and welfare of its citizens.

14. Plaintiff-Intervenor, the State of Alaska, is a sovereign state and has the authority and responsibility to protect its sovereignty, the wellbeing of its public fisc, and the health, safety, and welfare of its citizens.

15. Plaintiff, the State of Florida, is a sovereign state and has the authority and responsibility to protect its sovereignty, the wellbeing of its public fisc, and the health, safety, and welfare of its citizens.

16. Defendants are the United States, appointed officials of the United States Government, and United States governmental agencies responsible for the issuance and implementation of the challenged administrative action.

17. Defendant HHS is an agency of the United States of America.

18. Defendant Xavier Becerra is the Secretary of HHS and is being sued in his official capacity.

19. Defendant CDC is a component of HHS.

20. Defendant Rochelle Walensky is the director of the CDC and is being sued in her official capacity.

## JURISDICTION AND VENUE

21. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361 and 5 U.S.C. §§ 702–706.

22. The APA authorizes this Court to decide relevant questions of law and make a determination that agency action is not within or exceeds the agency's authority and issue declaratory and injunctive relief. 5 U.S.C. § 706.

23. The Declaratory Judgment Act authorizes this Court to enter a declaration declaring the rights and legal relations of the parties as well as further necessary and proper relief. 28 U.S.C. §§ 2201–02.

24. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because this action is brought against officers of the United States in their official capacities, and the actions and decisions challenged by this lawsuit were made, at least in part, in Florida and have a direct impact on the State of Florida. Venue lies in this district because Tampa is a major cruise port and a substantial part of the events or omissions giving rise to this complaint occurred in this judicial district.

## FACTUAL BACKGROUND

25. In March 2020, in response to the global COVID-19 pandemic, the CDC issued its initial order locking down the cruise industry and preventing sailings from United States ports. 85 Fed. Reg. 16628 (Mar. 24, 2020).

26. The March 14, 2020 order was renewed on April 9, 2020, July 16, 2020, and September 30, 2020. 85 Fed. Reg. 21004 (Apr. 15, 2020); 85 Fed. Reg. 44085 (Jul. 21, 2020); 85 Fed. Reg. 62732 (Oct. 5, 2020).

27. On October 30, 2020, the CDC issued the Conditional Sailing Order, which set forth conditions that would be required in order for cruises to set sail from United States ports. 85 Fed. Reg. 70153 (Nov. 4, 2020).

28. The Conditional Sailing Order lays out four phases of reopening the cruise industry: 1) establishment of laboratory testing of crew; 2) simulated voyages designed to assess the operator's ability to mitigate COVID-19 risk; 3) a certification process; and finally 4) a return to passenger voyages with risk mitigation in place. *Id.*

29. The Conditional Sailing Order is effective for an entire year, set to expire on November 1, 2021. 85 Fed. Reg. 70162 (Nov. 4, 2020).

30. Under the Conditional Sailing Order, unless cruise companies complete the four-phase process, they will not be allowed to sail until November 1, 2021. *Id.*

31. On April 2, 2021, the CDC issued guidance regarding the Conditional Sailing Order. The new guidance adds additional requirements for phases one and two but does not contain technical guidance for simulated voyages. The guidance specifies that a cruise ship operator must request CDC's approval at least 30 days before a simulated voyage and submit materials from that voyage

necessary to obtain a conditional safety certificate to the CDC at least 60 days before passenger operations can resume. In other words, the CDC has built in a minimum three-month waiting period from the time it issues guidance for simulated voyages and when a cruise ship operator might potentially be permitted to set sail.[3]

32. Without additional operative guidance, it is likely the cruise industry will be locked down until at least November 1, 2021, and possibly longer.

33. In contrast, the CDC has allowed other travel industries to resume, or has never locked them down.  For example, the airline industry is permitted to operate at full capacity, with the CDC providing only recommendations for domestic travel and only proof of a negative test required for Americans to reenter the United States.[4]

34. Other industries have successfully reopened with safety protocols in place, such as theme parks, hotels, and restaurants.

35. The cruise industry abroad has begun to successfully reopen in places like Europe and Asia, demonstrating that it can be done safely.[5]

---

[3] https://www.cdc.gov/quarantine/cruise/covid19-cruiseships.html
[4] https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html;
https://www.cdc.gov/coronavirus/2019-ncov/travelers/international-travel-during-covid19.html
[5] https://www.travelweekly.com/Cruise-Travel/MSC-chief-says-Europe-cruising-blueprint-restarts;
https://www.prnewswire.com/news-releases/royal-caribbean-extends-singapore-season-adding-new-cruises-on-quantum-of-the-seas-301260187.html

36. The cruise industry has prioritized improving health and safety measures over the course of the past year, and many are requiring their passengers to be vaccinated.[6]

37. The CDC has recently announced that vaccinated individuals can travel at little risk to themselves.[7]

38. In a typical year, Texas would expect to see over one million cruise passengers depart from Texas ports, which would create over $1.6 billion in direct spending. Ex. 1 at 47–48; Ex. 3.

39. The cruise industry in Texas supports almost 27,000 jobs. *Id.*

40. Through March 2021, the grounding of the cruise industry in Texas has led to $1.2 billion in direct spending losses as well as the loss of 23,000 jobs. *Id.*

41. Further, the oil industry will be harmed by the grounding of cruise ships for another season.

42. As a result of these losses, cruise companies and other tourism related businesses have suffered massive financial losses and have been forced to furlough or lay off workers. As such, Texas has suffered decreased tax revenue and incurred increased costs due to the payment of unemployment benefits.

---

[6] https://www.travelandleisure.com/cruises/cruises-that-allow-vaccinated-travelers?utm_campaign=travelandleisure_travelandleisure&utm_content=bestof_2weeks&utm_medium=social&utm_source=facebook.com&utm_term=608184b435e1c1000122a506&fbclid=IwAR0-GzSG7mrPxdPPjP8R4WFHqQitSBjqSSOZAi2FgfXSQR-LdnnmUzaolQo

[7] https://www.cdc.gov/media/releases/2021/p0402-travel-guidance-vaccinated-people.html#:~:text=Given%20recent%20studies%20evaluating%20the,last%20recommended%20dose%20of%20vaccine.

## CAUSES OF ACTION

**Count 1: Violation of the APA - Agency Action Not Within or in Excess of Agency Authority**

43. Texas incorporates by reference the allegations contained in ¶¶ 1–41.

44. Under the APA, agency action that is not in accordance with or in excess of agency authority must be set aside. 5 U.S.C. § 706(2).

45. In the Conditional Sailing Order, the CDC cites to 42 U.S.C. § 264, 42 U.S.C. § 365, 42 C.F.R. part 70, and 42 C.F.R. part 71 as its legal authority. None of these statutes grant the CDC the authority to take the actions it has taken in the Conditional Sailing Order; therefore, its actions are in violation of the APA.

46. The CDC has acted outside the authority granted to it under 42 U.S.C. § 264, which allows the Surgeon General, with approval of the Secretary, to make and enforce regulations necessary to prevent the introduction, transmission and spread of communicable disease. 42 U.S.C. § 264(a). Such regulations can include "inspection, fumigation, sanitation, pest extermination, destruction of animals or articles found to be infected" (*Id.*), but not the lock down of a multi-billion-dollar industry for a year and a half.

47. 42 U.S.C. § 268 deals with quarantine rules and enforcement and provides no authority for the CDC to lock down the cruise ship industry.

48. The CDC has acted outside its authority under 42 C.F.R. part 70, which allows certain actions if the CDC has determined local measures are inadequate. 42

C.F.R. pt. 70.2. Such regulations can include "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles." *Id.* This section also gives the CDC the authority to isolate or quarantine *individuals* in certain situations. 42 C.F.R. pt. 70.5. 42 C.F.R. part 70 does not authorize the lock down of a multi-billion-dollar industry for a year and a half.

49. Even if 42 C.F.R. part 70 did provide the authority for the CDC to lock down the cruise industry, the CDC has not made the necessary determination that Texas' measures to control the spread of COVID-19 on cruise ships are inadequate. 42 C.F.R. pt. 70.2. The CDC also failed to consider that Texas' cruise ship port, the Port of Galveston, is uniquely prepared to handle an occurrence of COVID-19 should one arise. The port is located within a mile of a National Biosafety level 4 Laboratory; the port has previously activated its Infectious Disease Management Plan in response to a potential Ebola outbreak on a ship. Furthermore, the Port was ahead of the curve in holding a training exercise to deal with a COVID-19 outbreak on a cruise ship in March 2020 prior to the industry being grounded. Ex. B.

50. 42 C.F. R. part 71 is entitled "foreign quarantine," and addresses procedures the CDC can take to prevent the introduction of communicable disease into the United States, but it provides no authority for the CDC to lock down the cruise ship industry.

**Count 2: Violation of the APA - Agency Action is Arbitrary and Capricious**

51. Texas incorporates by reference the allegations contained in ¶¶ 1–43.

52. Under the APA, an agency action found to be arbitrary, capricious, or an abuse of discretion must be set aside. 5 U.S.C. § 706(2)(A).

53. The Conditional Sailing Order does not consider the COVID-19 vaccine, which by the time the Conditional Sailing Order was adopted in October 2020, was already expected to be introduced in the near future, and to be widely available to the United States public well before the Order's November 1, 2021 expiration date.

54. The Conditional Sailing Order fails to consider the mitigation strategies put in place by the cruise industry, and it fails to consider the successes of these strategies implemented in real-world cruises in foreign markets which have allowed cruises to resume.

55. The Conditional Sailing Order fails to identify specific safety measures taken by Texas or the cruise industry and explain why those measures are inadequate and how they may be cured.

56. The Conditional Sailing Order is arbitrary and capricious because it fails to consider less onerous alternatives to a complete lock down of the cruise industry, such as but not limited to: limits on capacity, testing requirements, sanitation requirements, or other reasonable COVID-19 protocols.

57. The Conditional Sailing Order is arbitrary and capricious because it does not explain the differential treatment between the cruise industry and other travel related industries such as airlines, theme parks, and hotels, which operate with no or few federal regulations.

58. The CDC's failure to provide the cruise industry a meaningful opportunity to comply with the four-phase framework of the conditional sailing order is arbitrary and capricious. The CDC has not provided guidance to allow cruise ships to embark on their simulated voyages—a prerequisite to obtaining a conditional safety certificate, which is required before passenger voyages can be resumed.

**Count 3:   Violation of the APA - Agency Action Unlawfully Withheld or Unreasonably Delayed**

59. Texas incorporates by reference the allegations contained in ¶¶ 1-42.

60. In the alternative, and for the same reasons stated in Count 2, the CDC's failure to allow the cruise industry to safely reopen constitutes final agency action unlawfully withheld or unreasonably delayed, in violation of 5 U.S.C. § 706.

**Count 4:   Violation of the APA - Failure to Provide Notice and Comment**

61. Texas incorporates by reference the allegations contained in ¶¶ 1–42.

62. The APA requires federal agencies to provide notice of and an opportunity to comment on a substantive rule that affects individual rights and obligations. 5 U.S.C. § 553.

63. The Conditional Sailing Notice affects the rights and obligations of affected states, as well as members of the cruise industry and cruise industry customers; therefore, notice and comment is required.

64. The CDC failed to conduct proper and comment rulemaking. Although the CDC solicited information from the public, it did not respond to or address the public comments received. 85 Fed. Reg. 70153, 70157–8 (Nov. 4, 2020).

65. The "good cause exception" does not apply because the public procedure would not have been "impracticable, unnecessary, or contrary to public interest" in October 2020, even if it were impracticable in March 2020. 5 U.S.C. § 553(b)(3)(B).

66. In October 2020, no cruises were arriving at or departing from United States ports, so there was no danger of spread of COVID-19 on cruise ships absent the adoption of the Conditional Sailing Order. Therefore, no good cause existed for suspending the notice and comment requirements of the APA.

**Count 5:   Unconstitutional Exercise of Legislative Power**

67. Texas incorporates by reference the allegations contained in ¶¶ 1–42.

68. Article I, Section 1 of the United States Constitution states: "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." Under Article I, Section 1, only Congress may engage in lawmaking.

69. If the Conditional Sailing Order does not exceed the authority under 42 U.S.C. § 264 and the relevant regulations, then Section 264 constitutes an unconstitutional exercise of lawmaking by the executive branch, delegating to the CDC the essentially legislative power to determine the rights of millions of citizens, to decide on the survival of countless businesses, and to make a host of sweeping policy decisions without meaningful accountability.

### PRAYER

For the reasons articulated above, Texas asks this Court for the following relief:

a) A declaration that the Conditional Sailing Order is unlawful, in violation of the APA, and was not properly adopted, and setting it aside pursuant to the APA;

b) A preliminary and permanent injunction preventing HHSC, the CDC, and their agents and employees from enforcing the Conditional Sailing Order;

c) A declaration allowing the cruise industry to operate out of Texas with reasonable safety protocols;

d) Costs and reasonable attorneys' fees;

e) Any such other relief the Court deems proper.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER

First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS ALBRIGHT
Chief, General Litigation Division


/s/ Ryan G. Kercher
RYAN G. KERCHER
Texas State Bar No. 24060998
Assistant Attorney General
General Litigation Division
Ryan.Kercher@oag.texas.gov
Telephone:   (512) 463-2120
Facsimile:    (512) 320-0667
*Pro Hac Vice*
   *Lead Counsel


KIMBERLY FUCHS
Texas State Bar No. 24044140
Assistant Attorney General
Administrative Law Division
Kimberly.Fuchs@oag.texas.gov
Telephone:   (512) 475-4195
Facsimile:    (512) 320-0167
*Pro Hac Vice*

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

DAVID S. HARVEY, JR.
Florida Bar Number: 0984043
401 East Jackson Street, Suite 3400
Tampa, Florida 33602
david.harvey@lewisbrisbois.com
Telephone:   (813) 739-1900
Facsimile:   (813) 739-1919

ATTORNEYS FOR THE STATE OF TEXAS